UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN HOLCOMB, PLAINTIFF | : | CASE NO. |
| VS | : | |
| ROBERT HOLCOMB, DEFENDANT | : | MAY 27TH, 2016 |

# COMPLAINT

## I. PARTIES

1. The Plaintiff, Stephen Holcomb, is a resident of the State of Connecticut, and resides at 142 Grove Street, in Cheshire, Connecticut, 06410 and is a Citizen of the United States of America.

2. The Defendant, Robert Holcomb, is a resident of the State of Vermont, and resides at 2 Northshore Drive, Bellows Falls, Vermont, 05101 and is a Citizen of the United States of America.

## II. JURISDICTION

3. The Plaintiff, Stephen Holcomb, alleges that Jurisdiction of this Court is hereby invoked pursuant to 28 U.S.C. Section 1332, Diversity of Jurisdiction, and also claims pendent jurisdiction regarding all state claims alleged herein.

4. Plaintiff alleges an amount in controversy greater than $75,000, exclusive of costs, and interest.

## III. COUNT ONE: FRAUD IN THE INDUCEMENT

5. Allegations one through four above are re-alleged as allegation one through four of this count.

6. The Plaintiff, as buyer, and the Defendant (also known as Ho-Ges Realty, Inc.), as seller, entered into a Purchase and Sale Contract ("Agreement", appended as Exhibit A) for the property described as follows ("Property"):

> Property includes lands and premises known as North Shore Mobile Home Park, including lands and premises conveyed to Ho-Ges Realty, Inc. by warranty deed of Bruce D. Brown

and Jean H. Brown dated and recorded December 11, 1097 in Book 208, Page 192 and by warranty deed of Robert L. Clark dated November 12, 1999 and recorded November 16,

1999 in Book 253, Page 631 of the Rockingham Land Records. The park includes 21 mobile home sites as approved and permitted by the Town of Rockingham and a single family residence with apartment attached. Included are various items of personal property of the Seller used for maintenance of the premises, which personal property has no financial value and is being included at the convenience of the seller.

7. Section 3 of the Agreement states that the total purchase price is three hundred thousand Dollars ($300,000), to be paid as follows: $5,000 deposit; $55,000 cash at the closing; and $240,000 as mortgage loan.

8. Section 19 of the Agreement clearly states: "No modification, amendment or deletion affecting this contract shall be effective unless in writing and signed by Seller and Purchaser." See Exhibit A.

9. On or about Jan. 27th, 2012, both parties signed the Agreement.

10. On or about May 28th 2012, the Plaintiff and Defendant had the closing.

11. At the closing, the Plaintiff was given a promissory note to sign ("Note", appended as Exhibit B), prepared by the Law Firm of Dakin and Benelli, P. C., of Chester, Vermont, and payable to the Defendant for "value received," above and beyond the $300,000 sale price for the deal.

12. Plaintiff, as stated in the Agreement, and all of the closing documents, agreed to pay $300,000 for the property. This was because the property was not worth more than $300,000. Although Plaintiff did in fact try to get more financing in order to fix the property up, no bank would finance much more than $250,000, because the value was simply not present.

13. Both parties agreed to $300,000 sale price.

14. Relying on that agreed-upon price, the Plaintiff showed up at closing and purchased the property.

15. The representation made by the Defendant, that the sale price was $300,000, was false, and defendant knew it was false, and further, that representation was made by the Defendant and his lawyer

as inducement to get Plaintiff to the closing, where the Defendant added the Note to force Plaintiff to pay more than the deal was truly worth.

16. The sale price was clearly communicated to the Plaintiff, and all closing documents clearly illustrate that the agreed-upon sale price was $300,000.

17. The Defendant had his lawyer draw up the Note to change the terms of the Agreement, and this was done intentionally to induce the Plaintiff to purchase the Property for a price inconsistent with and significantly greater than the agreed-upon price. The Defendant's intent was to trick Plaintiff into paying a price over and beyond the true value of the property.

18. Plaintiff alleges fraud in the inducement by the Defendant, and seeks double damages for fraud in the inducement pursuant to Connecticut General Statutes Section 52-565 or, in the alternative, plaintiff alleges common-law fraud in the inducement.

## IV. COUNT TWO: BREACH OF CONTRACT

19. Allegations five through seventeen of Count One, above, are re-alleged and incorporated as though fully set forth here.

20. Pursuant to Section 3 of the Agreement, the actual price agreed upon by the Parties was $300,000.

21. Defendant breached the Agreement by forcing the Plaintiff by means of duress at the closing to sign the Note for $150,000 above and beyond the agreed upon price of $300,000 as mentioned in all closing documents.

22. Further, Section 19 of the Agreement requires both parties to sign any amendments, and this was not done with respect to the Note, causing the Defendant to breach the Agreement again.

23. Lastly, the acts of the Defendant are clearly unconscionable, whereby the Defendant sought an amount of $150,000 beyond the agreed-upon purchase price in order, upon information and belief, to cover the increase in his personal income taxes resulting from this sale. This was not discussed or

negotiated by the parties, but simply done by Defendant and Defendant's lawyer at the last minute, which had the effect of duress or of overbearing Plaintiff's will at the closing.

24. The Plaintiff claims breach of contract by Defendant's changing of the terms of the written contract at the closing, which clearly called for a purchase price of $300,000, by attempting to have Plaintiff sign the Note, which was never agreed to at the closing, and then, by failing to sign the same, the Defendant has thus breached the Agreement two times.

25. Said action of the Defendant is also unconscionable as stated above.

26. Plaintiff seeks damages for common-law breach of contract.

## V. COUNT THREE: FRAUD IN THE FACTUM

27. Allegations nineteen through twenty-five of Count Two, above, are re-alleged and incorporated as though fully set forth here.

28. Plaintiff alleges that besides being fraudulently induced, that he was also factually defrauded.

29. He went to the closing expecting that the terms of this transaction were already negotiated and concluded.

30. At the closing, the Defendant had his attorney present Plaintiff with the Note for alleged "value received."

31. However, the alleged value received was in fact the Property paid for by the amount set forth in the Agreement, namely $300,000.

32. There Plaintiff received no additional value; there was no other loan the Defendant co-signed for; there were no outstanding monies due Defendant which were not already described in the Agreement.

33. Under the terms of Section 19 of the Agreement, the Note, signed by the Plaintiff and not by the Defendant, cannot modify or amend the terms of the Agreement.

34. Defendant has performed, with his attorney, a fraud on the Plaintiff factually, when he had the

Plaintiff sign the Note under duress, alleging value other than that stated in the Agreement; there simply was not any other value to mention.

35. Plaintiff has been factually defrauded, and seeks double damages pursuant to Connecticut General Statutes Section 52-565 or, in the alternative, plaintiff alleges common-law fraud in the factum.

VI. COUNT FOUR: UNFAIR TRADE

36. Allegations twenty-seven through thirty-four of the Count Three, above, are re-alleged and incorporated as though fully set forth here.

37. In late 2015, at about the time that Plaintiff completed payment of the separate $30,000 mortgage note referred to in the Agreement, Defendant demanded payment of the $150,000 Note at issue in this action. Plaintiff declined to pay the Note, and Defendant, through his attorney, threatened to take legal action against Plaintiff unless the Note was paid.

38. The Plaintiff alleges that the conduct of the Defendant, by fraudulently inducing Plaintiff to buy his business for $300,000 and then trying to get Plaintiff to pay $450,000 (which is beyond the fair market value of the business), by trying to pass his tax liability on to the Plaintiff, by factually defrauding Plaintiff (by placing for value received in the Note, when in fact there was no value received), by breaching the Agreement twice (first, by trying to amend the Agreement without two signatures on the document, and second, by unlawfully changing the purchase price of the business), amounts to unethical, unscrupulous conduct in violation of the unfair trade practices statutes in Connecticut and Vermont.

39. Plaintiff alleges a violation of Connecticut General Statutes, Section 42-110b, et. seq., and Vermont General Statutes, Section 251a of Title 9.

40. Plaintiff alleges damages pursuant to that/those section(s).

A JURY TRIAL IS HEREBY <u>DEMANDED</u>.

THE PLAINTIFF,

BY____________/S/_____________

Frank P. Cannatelli
8 Research Parkway
Wallingford, Ct.
06492
Phone: (203) 949-1650
Fax: (203) 949-1660
Fed. # 04394

## DAMAGES

WHEREFORE, THE PLAINTIFF CLAIMS THE FOLLOWING DAMAGES:

FOR COUNTS ONE AND THREE:

1. DOUBLE DAMAGES FOR FRAUD PURSUANT TO COMMON LAW AND/OR C.G.S. SECTION 52-565.

2. COMPENSATORY DAMAGES.

3. EQUITABLE RELIEF PROHIBITING ANY ENFORCEMENT OF THE PROMISSORY NOTE.

4. ANY AND ALL OTHER RELIEF AS THIS COURT MAY DEEM APPROPRIATE.

FOR COUNT TWO:

1. DAMAGES FOR BREACH OF CONTRACT.

2. CONSEQUENTIAL DAMAGES FOR BREACH OF CONTRACT.

3. PUNITIVE DAMAGES FOR KNOWINGLY BREACHING THE CONTRACT.

4. ANY AND ALL EQUITABLE AND OR LEGAL RELIEF AS THE COURT DEEMS APPROPRIATE.

FOR COUNT FOUR:

1. DAMAGES PURSUANT TO C.G.S. SECTION 42-110G., AND COMPARABLE SECTION OF VERMONT STATUTE SECTION (TITLE 9, SECTION 251A, ET. SEQ.

2. PUNITIVE DAMAGES PURSUANT TO C.G.S. SECTION 42-110G ALLOWING COSTS AND ATTORNEY FEES, AND THE COMPARABLE SECTION OF THE VERMONT STATUTE SECTION (TITLE 9, SECTION 251A, ET. SEQ.

THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.

THE PLAINTIFF,

BY:______S/S_________________

Frank P. Cannatelli
8 Research Parkway
Wallingford, Ct. 06492
Phone: (203) 949-1650
Fax: (203) 949-1660
FED. 3 04394

CERTIFICATION

I, Frank P. Cannatelli, hereby certify that a copy of the foregoing was mailed, to the Attorneys General for the States of Connecticut, and Vermont, pursuant to 42-110g(c), and the comparable provision of the Vermont General Statutes, Title 9, Section 251a.

Further a copy was also mailed to the Connecticut and Vermont Commissioner of Consumer Protection.

A COPY TO:

Atty Gen. of Conn., 55 Elm St., Hartford, Ct. 06106;
Commissioner of Consumer Protection, 165 Capitol Ave., Hartford, Ct. 06106

and

A COPY TO:

Atty. Gen of Vermont, 109 State St., Montpelier, Vt. 05609;
Commissioner of Consumer Protection, 109 State St, Montpelier, Vt. 05609

_______________/s/_____________
Frank P. Cannatelli

Exh. 4

## PURCHASE AND SALE CONTRACT

1. Purchaser's Full Name: Stephen W. Holcomb, Sr
Karyn Holcomb
Mailing Address 142 Grove Street
Cheshire, CT 06410

Seller's Full Name: Ho-Ges Realty, Inc.
Mailing Address c/o Robert Holcomb
2 North Shore Drive
Bellows Falls, VT 05101

Purchaser agrees to Purchase and Seller agrees to sell the property described below on the terms set forth in this Purchase and Sale Contract.

2. **Description of Property:** Property includes lands and premises known as North Shore Mobile Home Park, including lands and premises conveyed to Ho-Ges Realty, Inc. by warranty deed of Bruce D. Brown and Jean H. Brown dated and recorded December 11, 1987 in Book 208, Page 192 and by warranty deed of Robert L. Clark dated November 12, 1999 and recorded November 16, 1999 in Book 253, Page 631 of the Rockingham Land Records. The park includes 21 mobile home sites as approved and permitted by the Town of Rockingham and a single family residence with apartment attached. Included are various items of personal property of the Seller used for maintenance of the premises, which personal property has no financial value and is being included at the convenience of the Seller.

3. **Total Purchase Price**: $300,000.00, to be paid as follows:

a. $ 5,000.00 - deposit to be held in escrow by Dakin & Benelli, P.C., Escrow Agent and attorney for the Purchaser
b. $ 55,000.00 - cash at closing
c. $240,000.00 - mortgage loan, secured by first purchase money security interest on the property, real and personal, as being negotiated with TD Bank, N.A., Chester, Vermont.

4. **Financing Contingency**: Purchaser's obligation under this contract is subject to a financing contingency that Purchaser obtain mortgage financing in the amount of at least $240,000.00 for a term of at least 20 years at an interest rate of not more than 5.5% fixed. Purchaser agrees to act diligently and in good faith to obtain such financing and shall, within 14 business days after Seller's acceptance, submit a complete and accurate application for mortgage financing to at least one financial institution currently providing such loans requesting financing in the amount and on the terms provided in this contract. If Purchaser fails to timely submit such an application, this financing contingency is

waived by Purchaser. If, despite best efforts, Purchaser is unable to obtain the financing specified in this contract by February 24, 2012, Purchaser shall have the right to TERMINATE this contract, provided, however, Purchaser shall give written notice directly to Seller of the inability to obtain such financing within 3 working days after the above date.

5. **Other Conditions of Closing:**

a. Seller warrants that it has complied with all Vermont statutory requirements for the sale of a mobile home park, including notice to all tenants and to the State of Vermont. Seller shall provide Purchaser with copies of all documents supporting compliance. Should Seller be unable to satisfy this condition, then Purchaser may terminate this contract and receive back all monies on deposit.

b. Seller shall provide Purchaser with copies of all current leases for the mobile home park sites. As a condition of closing, Seller shall assign all of the leases to Purchaser. Seller affirms that it is not holding any security deposits for mobile home park leases.

c. The purchase is subject to the ability of the Purchaser to obtain insurance coverage for the lands and premises of the mobile home park, including fire and casualty insurance for the structures, liability insurance for the operation of the mobile home park and flood insurance, all in amounts acceptable to Purchaser and Lender.

d. This sale is contingent upon the Purchaser obtaining, at Purchaser's sole expense, an inspection of the property by an independent property inspector selected by Purchaser. The inspection may include, but shall not be limited to, the roof, foundation, structural, mechanical, heating, plumbing, electrical, water, wastewater/septic/sewage, or other systems or improvements on the Property.

Any inspection shall be performed not later than twenty-one (21) days after the Seller's acceptance of the Contract and not thereafter.

If the results of such inspection are unsatisfactory to Purchaser, Purchaser shall have the right to terminate this Contract, provided that Purchaser shall give the Seller written notice of Purchaser's decision to terminate this Contract based upon the results of the property inspection not later than ten (10) business days after the receipt by the Purchaser of the inspection reports.

If notice of Purchaser's decision to terminate the Contract based upon the results of the property inspection is not provided within ten (10) business days after the receipt by the Purchase of the inspection reports or if the inspection is not

performed within twenty-one (21) days after Seller's acceptance of the Contract, this contingency shall be deemed waived and shall be of no further force and effect.

In the event Purchaser terminates this Contract in accordance with the provisions of this property inspection contingency, all deposit money, together with all interest thereon to which Purchaser is entitled, shall be forthwith returned to Purchaser and the Contract shall be of no further force and effect.

Seller hereby agrees to provide access to the Property upon reasonable prior notice for the purposes of the above inspection(s). Any damage caused to the Property as a result of the inspection shall be Purchaser's responsibility.

e. Seller shall provide a certificate of compliance with all smoke and carbon monoxide detector requirements imposed by the State of Vermont as to the residential property included in the sale.

6. **Closing**: Closing and transfer of title shall take place on or before March 2, 2012 at Noon at the office of Dakin & Benelli, P.C., 26 Main Street, Chester, Vermont, or at a mutually agreed upon location. Closing may occur earlier if the parties agree

7. **Efforts of Agent(s)**: Seller and Purchaser agree that no broker representing either Seller or Purchaser brought about this sale and that no real estate commission is owed by either Seller or Purchaser.

8. **Possession**: Possession and occupancy of the property shall be given upon closing unless otherwise agreed in writing, subject to the rights of the mobile home park tenants.

9. **Payment of Purchase Price**: Payment of the purchase price, adjusted for the Contract Deposit previously received, is due at closing and is to be paid by cashier's check or attorney trust account check.

10. **Deed**. At closing, Seller shall deliver to Purchaser a Vermont Warranty Deed, furnished and paid for by Seller, conveying marketable title to the real property described in this contract.

It is understood and agreed that the title herein required to be furnished by the seller shall be marketable and the marketability thereof shall be determined in accordance with the Vermont Marketable Title Act (27 V.S.A. § 601 et seq.) and Standards of Title of the Vermont Bar Association now in force to the extent applicable standards exist. It is also agreed that any and all defects in or encumbrances against the title which come within the scope of said Title Standards shall not constitute a valid objection on the part of the buyer, if such Standards do not so provide; provided, the seller furnishes any affidavits or

other instruments which may be required by the applicable Standards.

11. **Property Transfer Tax**: Purchaser shall be responsible for and shall pay the Vermont Property Transfer Tax due on the sale covered by this contract.

12. **Examination of Title**: Purchaser, at their sole cost and expense, shall cause the title to the Property to be examined, and, prior to closing, shall notify Seller or Seller's Attorney of the existence of encumbrances or defects which are not excepted in this contract and which render title unmarketable as defined by Vermont law and custom in the legal community. Seller, promptly following receipt of such notice, shall endeavor to remove the specified encumbrances or defects. If, at the expiration of thirty (30) days following the receipt of such notice or on the date set forth for closing, whichever is later, Seller is unable to convey marketable title free and clear of such encumbrances and defects, Purchaser may terminate this contract, and if so shall receive back all deposit money, plus accrued interest, and may, in addition, pursue all legal and equitable remedies provided by law.

13. **Default**: If Purchaser fails to close as provided herein, or is otherwise in default, Seller may terminate this contract by written notice to Purchaser and retain all Contract Deposits as liquidated damages, or may pursue all legal and equitable remedies provided by law. If Seller does not notify Purchaser of Seller's election of remedies within thirty (30) days following notice of Purchaser's default, Seller's sole remedy shall be retention of all deposit money as liquidated damages. Because of the nature and subject matter of this contract, damages arising from Purchaser's default may be difficult to calculate with precision. The amount of the Contract Deposit reflects, in part, a reasonable estimate solely to compensate Seller for Purchaser's default. It is not intended to be a penalty for Purchaser's breach nor is it an incentive for Purchaser to perform the obligations of this contract. If Seller fails to close as provided herein, or is otherwise in default, Purchaser may terminate this contract by written notice to Seller and shall receive back all deposit money or may pursue Purchaser's rights to all legal and equitable remedies provided by law. In the event legal action is instituted arising out of a breach of this contract, the prevailing party shall be entitled to reasonable attorney's fees and court costs.

14. **Deposits**: At closing and transfer of title, Escrow Agent shall disburse all deposits. In the event Purchaser terminates this contract under the specified provisions hereof entitling Purchaser to terminate, upon written demand, Escrow Agent shall refund such deposit to Purchaser. In the event either Seller or Purchaser does not perform and fails to close on the terms specified herein, this shall constitute a default. In the event of a default undisputed by Seller and Purchaser, upon written demand, Escrow Agent shall pay the deposit to the non-defaulting party. In the event of a dispute concerning default, Escrow Agent shall not be personally liable to either party except for bad faith or gross neglect. In the event a claim other than bad faith or gross neglect is asserted against Escrow Agent, the parties shall jointly and severally indemnify and hold Escrow Agent harmless

from all loss or expense of any nature, including attorney's fees, arising out of the holding of the deposit. In the event of a dispute, Escrow Agent may pay the deposit into a court of competent jurisdiction for the purpose of determining the rights of the parties to the deposit. All costs and expenses of such action including attorney's fees incurred by Escrow Agent shall be borne jointly and severally by Seller and Purchaser irrespective of the amount of the deposit.

15. **Fixtures and Personal Property**: Insofar as any of the following items are now located on the property, they shall be deemed to be fixtures and are included in this sale: central heating, lighting and plumbing fixtures; storm window and doors; screens and screen doors; curtain rods, window shades and venetian blinds; shrubbery and trees; wall-to-wall carpeting; and television antennae. *NO PERSONAL PROPERTY IS INCLUDED IN THIS SALE UNLESS EXPRESSLY IDENTIFIED AND DESCRIBED IN THIS CONTRACT OR IN ANY SCHEDULE ATTACHED HERETO*. Any personal property transferred under this contract is sold "As is" with no express or implied warranties other than the warranty of title.

16. **Risk of Loss/Insurance**: During the period between the date of this contract and transfer of title, risk of loss shall be on Seller. Seller shall continue to carry fire and extended coverage insurance presently maintained on the buildings and improvements located on the Property. In the event any of the buildings or improvements are destroyed or damaged and are not restored to their present condition by the date set for closing, Purchaser may either accept title to the Property and receive the benefit of all insurance monies recovered on account of such damage or terminate this contract.

17. **Closing Adjustments**: The following, if applicable, shall be apportioned as of the date of closing from the beginning of the current taxable periods established by each taxing authority: all property taxes, water, fire, school, sewer or other municipal charges. Should any tax, charge or rate be undetermined on the date of closing, the last determined tax, charge or rate shall be used for purposes of apportionment. For purposes of town tax prorations and school tax prorations, a July 1 to June 30 tax year shall be used. Fuel, rent, association dues and interest on assumed mortgages shall be adjusted on a pro-rata basis.

18. **Effect**: This contract is for the benefit of and is binding upon Seller and Purchaser, their heirs, successors, administrators, executors and assigns. This contract contains the entire agreement by and between Seller and Purchaser and supersedes any and all prior agreements, written or oral. This contract shall be governed by the laws of the State of Vermont.

19. **Modification and Amendment**: No modification, amendment or deletion affecting this contract shall be effective unless in writing and signed by Seller and Purchaser.

20. **Notice:** All notices required to be given under this contract shall be deemed given when hand delivered or when deposited in the U.S. Mails, certified, registered or express mail, return receipt requested, postage prepaid and properly addressed to Seller or Purchaser at the addresses set forth in this contract. In the alternative, notices may be sent by facsimile transmission (fax) provided the original of the document sent by fax is hand delivered or mailed within a reasonable time, but not more than ten (10) days after the date of the fax transmission. In the event notices are sent by regular U.S. Mail, such notices shall be effective upon receipt.

21. **Lead Paint Addenda:** The house on the property having been constructed prior to 1978, a Disclosure of Information on Lead-Based Paint Addendum and Vermont Lead-Based Paint Addendum are attached hereto.

22.

[signature] Purchaser Date 1/27/12
Stephen W. Holcomb, Sr

[signature] Purchaser Date 1/27/12
Karyn Holcomb

Ho-Ges Realty, Inc..

By [signature] Seller Date 1/27/12
Robert Holcomb, its authorized agent

# DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS

***Required Federal Lead Warning Statement***

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspection in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

***Seller's Disclosure***
*(initial where applicable)*

Presence of lead-based paint and/or lead-based paint hazards (check a or b below):

_________ a. Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_______________________________________________

_______________________________________________

____✓____ b. Seller has no knowledge of lead-based paint and or lead-based paint hazards in the housing.

Records and reports available to the seller (check a or b below):

_________ a. Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (lists documents below):

_______________________________________________

____✓____ b. Seller has no reports or records pertain to lead-based paint and/or lead-based paint hazards in the housing.

***Purchaser's Acknowledgment***
*(initial where applicable)*

________ Purchaser has received copies of all information listed above.

________ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

Purchaser has (check a or b below):

________ a. Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

✓ b. Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

***Certification of Accuracy***

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information respectively provided by each of them is true and accurate.

[signature] 1/27/12 — Seller, Date | [signature] 1/27/12 — Purchaser, Date

________ — Seller, Date | [signature] 1/27/12 — Purchaser, Date

Ex. B

# PROMISSORY NOTE

$150,000.00 April 2, 2012

FOR VALUE RECEIVED, I, Stephen W. Holcomb, Sr., whose address is 142 Grove Street, Cheshire, CT 06410, promise to pay to the order of Robert Holcomb, whose address is 2 North Shore Drive, Bellows Falls, VT 05101, or order, the principal sum of One Hundred Fifty Thousand Dollars ($150,000.00), without interest, which principal will be payable in lawful money of the United States at such place as the legal holder hereof may designate or, in lieu thereof, at the address set forth above, **on demand.**

In the event of default following notice of demand for payment, the Note holder shall send a written notice to the Borrower advising that if the overdue amount is not paid by a certain date, then the Note Holder may require the Borrower to pay immediately the full amount of principal that has not been paid and all the interest that is owed on that amount. That date must be at least 15 days after the date on which the notice is mailed to the Borrower. Failure to exercise this option at any time shall not constitute a waiver of the right to exercise the same at any other time.

All parties to this note, whether principal, surety, guarantor, or endorser, hereby waive presentment for payment, demand, protest, notice of protest, and notice of dishonor, and all defenses on the ground of extension of time for the payment hereof which may be given by the holder of this note to them or to anyone who has assumed the payment of this note. Further, the undersigned agree to pay all reasonable attorneys' fees and costs of collection incurred in the collection of any sum more than fifteen (15) days overdue.

If any action or proceeding is commenced to which the Note holder is made a party, in which action or proceeding is questioned the validity of this Note, then all costs, including reasonable attorney's fees, incurred by the Note holder in such event shall be paid by the Borrower, together with interest at the rate stated in this Note, from the date of payment by the Note holder, and all such sums and interest thereon shall be immediately due and payable.

There shall be no penalty for prepayment of principal hereunder.

**NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

IN THE PRESENCE OF:

Beverly Zimmerman
Witness

Stephen Holcomb
Stephen W. Holcomb, Sr.

DAKIN & BENELLI P.C.
ATTORNEYS AT LAW
P.O. BOX 499
CHESTER, VERMONT
05143-0499
802 875-4000